UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CANDACE HEALY, | : <br> : <br> : Civil Action No. 18-13471 (KM) <br> : <br> : <br> : **OPINION** <br> : <br> : <br> : <br> : |
| Petitioner, | |
| v. | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

**KEVIN MCNULTY, U.S.D.J.**

Pro se petitioner Candice Healy[1] moves to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255. DE 1. For the reasons below, the petition is denied and a certificate of appealability will not issue.

**I.    BACKGROUND**

**A.  Plea Agreement**

In July 2015, Healy pled guilty, pursuant to a plea agreement, to conspiring to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846. *United States v. Healy*, Crim. No. 15-335, DE 127 (plea agreement). In her plea agreement, Healy stipulated that the offense involved between 500 grams and 1.5 kilograms of methamphetamine, and waived the right to appeal or collaterally attack any sentence "within or below the Guidelines range that

---

[1] The petitioner's first name is spelled "Candice" on the criminal docket, 15-cr-335, but "Candace" on the current docket. The Court was advised during Healy's criminal proceedings that the correct spelling is "Candice." Crim. No. 15-335, DE 145 at 2.

results from a total Guidelines offense level of 31." *Id.* at 6.[2] The plea agreement also contained

the following representation by Healy:

> I have received this letter from my attorney, Dawn M. Florio, Esq. I have read it and/or it has been read to me. My attorney and I have discussed it and all of its provisions, including those addressing the charges, sentencing, restitution, stipulations, waiver, immigration, and tax consequences. I understand this letter fully. I hereby accept its terms and conditions and acknowledge that it constitutes the plea agreement between the parties. I understand that no additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties. I want to plead guilty pursuant to this plea agreement.

*Id.* at 5. Florio represented in the agreement that she discussed the agreement, including the

waiver, with Healy. *Id*.

### B. Plea Hearing

During her July 2015 plea hearing, counsel for the Government described the waiver

provision in the plea agreement as follows: "Ms. Healy has agreed that if she is sentenced within

or below the offense level . . . 31, she has agreed to waive her right to file any appeal or

collateral attack." *Id.*, DE 145 at 4. I then asked Healy the following questions and received the

following responses:

> THE COURT: . . . Ms. Healy, in order to enter a . . . guilty plea, . . . it's important that you understand the rights you are waiving or giving up, and so I'm going to ask you a number of questions to make sure you understand those rights. . . .
>
> . . .
>
> THE COURT: Now, you heard . . . the summary . . . of the agreement to plead guilty. Do you agree that that summary was accurate?

---

[2] The agreement included the following: "As set forth in Schedule A, the Office and Healy waive certain rights to file an appeal, collateral attack, writ or motion after sentencing, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255." Crim. No. 15-335, DE 127 at 3. Schedule A, in turn, stated that Healy "knows that she has and . . . voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to . . . a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from a total Guidelines offense level of 31." *Id.* at 6.

> THE DEFENDANT: Yes.
>
> THE COURT: Now, there is a plea letter dated December 2, 2014. Let me direct your attention to Page 5. The question is just, is that your signature, ma'am?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did you sign that on June 8th of 2015?
>
> THE DEFENDANT: Yes.
>
> . . .
>
> THE COURT: All right. When you signed the plea agreement, Ms. Healy, did you read it?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And did you discuss it with your attorney and did your attorney answer your questions so you felt you understood what it was you were signing?
>
> THE DEFENDANT: Yes.

*Id.*, DE 145 at 4–8.

I confirmed that Healy wished to plead guilty voluntarily, of her own free will, and not as the result of any threat, coercion, or promise. Specifically, I asked:

> THE COURT: Now, did anyone make you any promises or offer you anything to get you to sign this plea agreement? To turn it around the other way, did anyone threaten you verbally, physically, or any other way to get you to sign this plea agreement?
>
> THE DEFENDANT: No.
>
> THE COURT: Has anyone told you you will or might get a specific sentence if you plead guilty?
>
> THE DEFENDANT: No.
>
> . . .
>
> THE COURT: Okay. So let's -- let me just ask you the general question. Did you sign the plea agreement voluntarily of your own free will?
>
> THE DEFENDANT: Yes.

*Id.*, DE 145 at 8–9

3

During the plea hearing I also advised Healy as follows and confirmed that she was satisfied with her counsel's representation:

> Let me pause and say something to you, though, which is, if at any time you have to ask your attorney any questions, you feel you don't understand what's going on, you can do that. You can just whisper to her. If it requires a more extended discussion, you can stop and take a break. Do you understand?
>
> THE DEFENDANT: Yes, I understand.
>
> THE COURT: So let me ask you now, are there any questions or concerns that your attorney has not answered to your satisfaction that you need to speak to her about?
>
> THE DEFENDANT: No.
>
> THE COURT: Are you satisfied with your attorney's representation?
>
> THE DEFENDANT: Yes.

*Id.* at 10. I further explained to Healy the maximum penalties she faced and advised that "what is more likely to affect your actual sentence are the [S]entencing [G]uidelines." *Id.* at 18. I asked Healy if Florio had discussed with her how the Guidelines might affect her case, and Healy confirmed that she had. *Id.*

Finally, I confirmed that Healy discussed the plea agreement's waiver provision with her counsel and understood the rights she was waiving:

> THE COURT: . . . [O]rdinarily, both you and the government would have a right to appeal. Now, there are other kinds of challenges you can bring to a sentence, we call them collateral challenges. Sometimes we'll hear the numbers 2255. That's not important. The only important thing to understand is that there's two kinds of a challenge. One, that appeal to a higher court, or two, collateral challenges, where you go back to the Court and challenge your sentence in some way. Do you understand that those exist?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. Now, under the situations set forth in your plea agreement, . . . you give up your right to appeal, or, bring a collateral attack challenge to your sentence. Do you understand that?
>
> THE DEFENDANT: Yes.

> THE COURT: Now, the plea agreement provides if I impose a sentence that corresponds to the guidelines offense level of 31 or below, you cannot file an appeal, a Section 2255 petition, a writ, a motion, or any other collateral attack challenging your sentence. Do you understand?
>
> THE DEFENDANT: Yes.
>
> THE COURT: To flip it around the other way, you can only challenge your sentence if I impose a sentence that is above the range that corresponds to offense level 31. Do you understand?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. . . . Ms. Healy, have you discussed with your attorney this waiver of appeal and waiver of the right to file a collateral attack and did your attorney explain it to you?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. So do you feel you understand it?
>
> THE DEFENDANT: Yes.

*Id.* at 20–22.

Based on Healy's representations, I accepted her guilty plea and made the following findings:

> The defendant is competent to answer the plea, the defendant is admirably represented by counsel. The defendant is aware of and understands the charge in the Information. The defendant understands the elements of the charged offense. The defendant's entry of a plea of guilty is voluntary, knowing, intentional, and uncoerced. The defendant knows and understands the terms of the plea agreement. The defendant understands her constitutional rights. The defendant knowingly, voluntarily, and intentionally waives those constitutional rights. The defendant understands the penalties that may attach as a result of this guilty plea. The defendant understands the maximum penalties, the sentencing guidelines and their application to the case and their rights under the guidelines. The defendant understands the consequences of the plea. The defendant understands that she will be bound by the statements in court today . . . .

*Id.* at 25.

**C. Sentencing**

I imposed sentence on November 29, 2017. *Id.*, DE 146 at 23 (sentencing transcript); *id.*, DE 139 (judgment).[3] Healy's advisory guideline sentence, using an offense level of 31 and Criminal History Category of III, was 135 to 168 months of imprisonment. *Id.*, DE 146 at 3. I varied downward substantially and imposed a sentence of 80 months. *Id.*, DE 146 at 23; *id.*, DE 139. The factual recitation in the Pre-Sentence Report ("PSR"), which I accepted without objection, demonstrated that Healy had been involved in multiple transactions and had offered herself as a substitute supplier. *Id.*, DE 146 at 3; *Id.*, DE 142 at 1. The PSR did not recommend either an upward or downward adjustment for her role in the offense; Healy did not object to the PSR, nor move for a downward departure. *Id.*, DE 142 at 1; *id.* DE 146 at 4.

In deciding to impose an 80-month sentence of imprisonment, I considered, among other things, Healy's role in the conspiracy and addressed it as follows in articulating the 18 U.S.C. § 3553(a) sentencing factors.[4] As to the "nature and circumstances of the offense," I explained:

---

[3] Healey was represented at the sentencing by Gary Mizzone. Mizzone was appointed pursuant to the Criminal Justice Act after Florio moved to withdraw when Healey was unable to pay her fees. 15-cr-335, DE 128, 131.

[4] 18 U.S.C. § 3553(a) sets forth the following factors a sentencing court must consider in fulfilling its obligation to "impose a sentence sufficient, but not greater than necessary":

   (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
   (2) the need for the sentence imposed--
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
   (3) the kinds of sentences available;
   (4) the kinds of sentence and the sentencing range established for--
   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
   (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether

> That's not usually a favorable factor for the defendant and it isn't here. This is a serious offense. Defendant Ms. Healy got herself mixed up with a multi-state methamphetamine ring that was selling fairly large quantities on a monthly basis. I realize she was not herself involved to the, you know, full extent of the conspiracy. I don't think that she was a kingpin or that all of the sales involved her or anything like that. I'm aware of the limitations to her role, nevertheless, she was -- she was in it and she has stipulated to an amount attributable to her, not just to the conspiracy, of between 500 grams and 1.5 kilograms.
>
> She at least attempted to be a backup supplier for Mr. Freehauf, who's one of the more higher-up figures in this conspiracy, and there was talk of far larger quantities. Some of this, I'm sure, was just big talk, but nevertheless, there was some willingness there to go beyond what we actually know about the actual sales changing from the intercepted conversations and tended to be in the quantity of ounces rather than kilograms. But there was nearly enough to the amount that we talked about.
>
> It is a serious offense. Methamphetamine is a dangerous and addictive drug and nobody knows that better than you. It's something that the criminal law takes seriously in its selection of sentences with this, which are, frankly, high.

*Id.*, DE 146 at 15–16.

In considering the "unwarranted disparity" factor, I explained how Healy's role in the conspiracy supported a downward variance:

> But in general, my policy in sentencing it's not an inflexible policy, but in an appropriate case where I see a great deal of difference in culpability from the defendants is to have a somewhat longer ladder of culpability, if you will, tha[n]

---

such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
(5) any pertinent policy statement--
(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.[1]
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

> the guidelines generally provide for. The guidelines, you know, will give you a couple of points or add a couple of points, you know, for your role in the offense. My personal feeling is that in many cases the scale should be longer than that, the gradient between the least and most culpable should be steeper than that, and I think this is such a case and I have sentenced in accordance with that.
>
> And for a matter of fairness within the case, which is an additional factor I consider, I'm going to sentence the defendant sort of within that type of hierarchy according to the sentences that have been given already. So that's another factor.
>
> . . .
>
> . . . [J]ust looking at the defendant, where she fits in the hierarchy here, she's involved some of the strictly street-level folks including that she was, you know, cognizant of and involved in the distribution aspect, but well below, I would say, the major figures who were the leaders of this conspiracy, and I think her sentence should lie somewhere in between what they got and what the lowest people got, and will.

*Id.* at 21–22.

I also imposed, as relevant here, a 3-year term of supervised release, which was the mandatory minimum. *See* 21 U.S.C. § 841(b)(1)(C) ("any sentence imposing a term of imprisonment under this paragraph shall . . . impose a term of supervised release of at least 3 years in addition to such term of imprisonment").

### D. Motion for Sentence Reduction

About five weeks after I imposed the sentence, Healy moved for a sentence reduction, arguing that she should have received a two-point reduction for having played a minor role in the criminal scheme—in other words, that her base offense level of 31 should have been 29, and that her Guidelines range should have been 108 to 135 months instead of 135 to 168 months. *Id.*, DE 140. I denied the motion both as waived by her plea agreement and as procedurally barred (because it was made more than 14 days after judgment was entered, and because Healey could have, but did not, raise the same argument prior to her sentencing). *Id.*, DE 142 at 2–3.

**E. Habeas Petition**

Healy then filed this § 2255 petition, reasserting that she was entitled to a two-point reduction for having played a minor role, and further alleging that her counsel was ineffective by pressuring her to plead guilty, failing to explain the ramifications of the criminal base offense level system, and failing to advocate for the minor role reduction she sought in her post-sentence motion. DE 1 at 4–5. Healy requests the following relief from the Court:

> Reduction in sentence, grant minor role reduction, lowering base offense level 2 points, (from 31 to 29) at a 41% downward departure, as done in her original sentence (guidelines were 135-168, and she received sentence of 80 months.) Request a term of approximately 60 months.

DE 1 at 12-12.

The Government answered the petition (DE 9) and Healy did not file a reply. The motion is therefore fully submitted and ready for decision.

**II. DISCUSSION**

**A. Jurisdiction**

Healy was released from the custody of the Bureau of Prisons ("BOP") on January 13, 2022,[5] and is now serving her term of supervised release. Healy's petition appears to challenge her now-completed sentence of imprisonment and not her term of supervised release, and in any event, the term of supervised release is the 3-year statutory mandatory minimum. The question therefore arises as to whether there is any relief I could possibly grant to Healy, such that this petition is not moot. I conclude that there is; the Third Circuit, in analogous circumstances, has noted at least a theoretical possibility that a district court could grant a credit against a term of supervised release "for an excess period of imprisonment." *United States v. Prophet*, 989 F.3d 231, 235 (3d Cir. 2021); *see also, e.g.*, *United States v. Doe*, 810 F.3d 132, 143 (3d Cir. 2015)

---

[5] *See* BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last checked Nov. 8, 2022).

9

(explaining that "where a § 2255 movant on supervised release appealed the length of his imprisonment," the district court "could credit him with the time served in prison exceeding a lawful sentence and reduce the length of his supervised release by that amount"). In other words, if Healy could establish that her sentence was longer than it otherwise would have been, based on some claim that she has not waived, I could in theory reduce the length of her supervised release by a corresponding amount of time.

In addition, Healy alleges in passing that her attorney pressured her into pleading guilty, which I construe as a challenge to the validity of her guilty plea (and thus her conviction), which is presumed to have collateral consequences. *Leahy v. Hollingsworth*, No. 15-7592, 2016 WL 3392269, at *2 (D.N.J. June 15, 2016) ("When a habeas petitioner challenges his underlying conviction, and he is released during the pendency of his habeas petition, federal courts presume that a wrongful criminal conviction has continuing collateral consequences sufficient to satisfy the injury requirement.") (internal quotation marks and citation omitted). The petition is therefore not moot. It is, however, meritless, as discussed below.

### B. Legal Standards Applicable to § 2255 Motions

A prisoner in federal custody under sentence of a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" upon three grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; or (3) "that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a).

A criminal defendant bears the burden of establishing entitlement to § 2255 relief. *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Moreover, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456

U.S. 152, 166 (1982); *see also United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) ("a motion pursuant to 28 U.S.C. § 2255 is reviewed much less favorably than a direct appeal of the sentence."). In considering a § 2255 motion, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (internal quotation marks and citation omitted). "It is the policy of the courts to give a liberal construction to *pro se* habeas petitions." *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010) (citation omitted). The Court may dismiss the motion without holding an evidentiary hearing if the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief. *See* 28 U.S.C. § 2255(b); *Liu v. United States*, No. 11-4646, 2013 WL 4538293, at *9 (D.N.J. Aug. 26, 2013) (citing *Booth*, 432 F.3d at 545–46).

### C. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, Healy must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, she must show that her counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. A court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"; thus, the court's scrutiny of counsel's performance "must be highly deferential." *Id.* at 689.

> In *Strickland* we said that "[j]udicial scrutiny of a counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S., at 689, 104 S. Ct. 2052. Thus, even when a court is presented with an ineffective-assistance claim not subject to § 2254(d)(1) deference, a defendant must overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy .' " *Ibid.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)

11

*Bell v. Cone*, 535 U.S. 685, 698, 122 S. Ct. 1843, 1852 (2002).

Second, Healy "must show that the deficient performance prejudiced the defense." *Id.* at 687. In the context of a guilty plea, this means that the defendant "must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012). In other words, a defendant claiming that ineffective assistance "led to the improvident acceptance of a guilty plea" must show "a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." *Id.* at 162. And a defendant claiming ineffective assistance as to sentencing must show "a reasonable probability that, but for counsel's error, the result of the sentencing proceeding would have been different." *Grippo v. United States*, No. 14-4577, 2016 WL 7223316, at *5 (D.N.J. Dec. 12, 2016) (quoting *United States v. Polk*, 577 F.3d 515, 520 (3d Cir. 2009)).

Both prongs must be established to set forth a valid claim; however, "[a] court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Strickland*, 466 U.S. at 668.

Healy alleges that Florio provided constitutionally deficient representation because Florio "pressured" her "into formally entering [the] plea agreement in a rushed manner." DE 1 at 4. The record completely belies this claim. In the plea agreement itself, Healy acknowledged that she had read the agreement, discussed it with Florio, and understood it fully. 15-cr-335, DE 127 at 5. On the record and under oath at the plea hearing, *see id.*, DE 145 at 5, and as set forth in block quotes above, Healy acknowledged that (1) she had read the plea agreement, (2) discussed it with

Florio, (3) Florio had answered her questions, (4) she understood the agreement before signing it, (5) she had not been coerced, (6) no promises had been made to her, and (7) her guilty plea was the product of her own free will. *Id.* at 8–9. "Solemn declarations in open court carry a strong presumption of verity" in subsequent habeas proceedings, *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), and courts have generally rejected attempts to escape the consequences of sworn open-court statements through vague and conclusory assertions of coercion or pressure.[6]

Healy's allegation that counsel did not explain the "Criminal Base Offense Level point system" to her is also contradicted by the record. The plea agreement—which, again, Healy acknowledged that she read, discussed with Florio, and understood—contained the agreed upon offense level of 31. *Id.*, DE 127 at 6. At the plea hearing, I advised Healy of the maximum possible penalties, but informed her: "[W]hat is more likely to affect your actual sentence are the [S]entencing [G]uidelines." *Id.*, DE 145 18. I then asked, "Has your attorney discussed with you how the sentencing guidelines might [a]ffect your case?" to which Healy responded, "Yes." *Id.* On these facts, Healy has not established that her counsel rendered constitutionally deficient performance by rushing or pressuring her into entering into the plea agreement or failing to explain Guidelines offense levels.

---

[6] *See, e.g.*, *Pena v. United States*, No. 20-16560, 2021 WL 3561349, at *6 (D.N.J. Aug. 12, 2021) (rejecting petitioner's claims that he did not understand the terms of his plea agreement because they were "directly belied by Petitioner's clear statements to this Court both in his application to plead guilty and during his plea hearing"); *United States v. Hogan*, No. CR 06-537-02, 2017 WL 3015192, at *3 (E.D. Pa. Feb. 17, 2017) (rejecting petitioner's claim "that counsel pressured him into signing plea agreement" because he had "testified to the opposite" at his plea hearing); *United States v. Shumaker*, 475 F. App'x 817, 822 (3d Cir. 2012) (rejecting claim that plea was coerced because petitioner made "unequivocal statements made under oath at the change of plea hearing that he was satisfied with Attorney's . . . representation"); *Tate v. United States*, No. 11-53, 2015 WL 5317447, at *2 (D. Del. Sept. 10, 2015) (petitioner's "assertion of coercion" was "belied by his statements under oath on the record, as demonstrated by the transcript of his plea colloquy"); *Alston v. United States*, No. 05-332, 2008 WL 5279692, at *3 (E.D. Pa. Dec. 17, 2008) (rejecting claim that plea was coerced because "Court conducted an extensive colloquy" to establish that the plea was voluntary).

Finally, Healy argues that Florio's performance in negotiating the plea agreement was deficient because Florio failed to "advocate for 2-point level reduction for Minor Role involvement when defendant was clearly eligible for such 2-point level downward adjustment [but] [i]nstead . . . pressured defendant into formally entering plea agreement in a rushed manner." DE 1 at 4. This argument is meritless for at least two reasons. First, assuming that counsel did not press such an argument during plea negotiations—and Healy's conclusory allegation is hardly sufficient evidence of that—it is far from clear that any such argument would have been successful. Whether Healy played a minor role in the conspiracy, as required for the two-point reduction specified in U.S.S.G. § 31B.2, is a question of fact. *See United States v. Rodriguez*, 68 F. App'x 357, 358 (3d Cir. 2003). And here, the facts do not necessarily establish that Healy had a "minor" role. As I stated at Healy's sentencing, although she was not a "ringleader," she attempted to be a backup supplier for Freehauf, a higher-up in the conspiracy, and there was discussion of "far larger quantities" than the amount stipulated to in the plea agreement. 15-cr-335, DE 146 at 16. Thus, it is not clear that the application of U.S.S.G. § 31B.2 for a minor role reduction was warranted.

Second, and more fundamentally, plea negotiations are, by their nature, give-and-take, and here Healy's counsel was successful in obtaining significant concessions from the Government. Healy was initially charged in a criminal complaint with violating 21 U.S.C. § 841(a)(1) & (b)(1)(A), which carried, among other penalties, a mandatory minimum term of imprisonment of ten years and a maximum of life. After plea negotiations, the Government agreed to accept a guilty plea to a violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C), which has substantially lower penalties: no mandatory minimum and a maximum of 20 years. And this was despite Healy's stipulation to a quantity—500 grams but less than 1.5 kilograms—that could

14

have resulted in a significantly more punitive charge. *See* 21 U.S.C. § 841(b)(1)(A)(viii) (10 years to life for violations involving "500 grams or more of a mixture or substance containing a detectable amount of methamphetamine").

The Government also accepted a stipulation of a drug amount attributed specifically to Healy—not the far greater amount attributable to the conspiracy—that counsel for the Government described as "understated." 15-cr-335, DE 146 at 11–12 ("This was a serious offense. The defendant was involved in a multi-state methamphetamine tracking ring and the drug amount . . . that was reasonably foreseeable to the defendant . . . is, if anything, understated from the intercepted calls."); *see also id.* at 13 (in a multi-month conspiracy, "the ringleader was taking credit for dealing in three to four pounds a month"). In short, counsel exercised reasonable professional judgment in advising her client to accept a plea offer that avoided a ten-year minimum (and potential life maximum), even if that deal did not include a specific carve-out for a role reduction.

Obtaining these concessions in return for waiving challenges to any sentence at or below offense level 31 was a legitimate and, as it turns out, highly effective strategy. Under *Strickland,* there is a presumption that counsel is acting strategically, and matters of legal strategy are given wide deference. *See* pp. 11–12, *supra* (citing *Strickland,* 466 U.S. at 689).

Further, it must be kept in mind that the claim here is not one of judicial error in calculating the Guidelines at level 31, a claim which has been waived and dealt with in an earlier ruling. *See* Section II.D, *infra*. It is counsel's *advocacy* with respect to Healy's role in the offense that is said to have been deficient. Clearly it was not (and *a fortiori,* it did not prejudice Healy, as expressed below).

Healy has not satisfied the first, deficient-performance prong of *Strickland*.

15

I turn to the "prejudice" prong. This fails at the threshold, as Healy has not alleged that absent the alleged deficient performance, she would have rejected the plea and insisted on going to trial.

At any rate, regardless of whether Healy was "entitled" to the minor role reduction, I made clear during Healy's sentencing that I considered her role in the conspiracy when I decided on a sentence that was 55 months lower than the bottom of the Guidelines range (and 38 months lower than the bottom of the range that Healy now claims should have applied). *See id.*, DE 146 at 15–16 ("I'm aware of the limitations to her role"); *id.* at 21 ("The guidelines . . . will give you a couple of points or add a couple of points . . . for your role in the offense. My personal feeling is that in many cases the scale should be longer than that, the gradient between the least and most culpable should be steeper than that, and I think this is such a case and I have sentenced in accordance with that."). In other words, I was well aware of Healy's claim of playing a less significant role in the conspiracy, and took it into account when granting her a very significant downward variance from the Guidelines range. That reduction, I explicitly stated, was greater than, and subsumed, any hypothetical two point minor-role adjustment. In short, as is the Court's obligation, I looked past the Guidelines and sentenced in accordance with the purposes of sentencing under 18 U.S.C. § 3553(a), explicitly stating that my own approach would be far more generous than that of the Guidelines.

It was a reasonable strategy for counsel to take the Court's concession and run with it. Quibbling over a two-point adjustment would have been counterproductive, where the Court was clearly committed to a far greater reduction on the same grounds. I can state that, beyond a reasonable doubt, that my sentence would have been no different if the starting point for the variance based on Healy's role had already taken into account two points' worth of role

16

adjustment. Under these circumstances, the defendant has not established prejudice resulting from any alleged failure to advocate for a two-point minor role reduction.

Accordingly, Healy has not met her burden under *Strickland* and *Lafler* to demonstrate deficient performance and prejudice, and, therefore, is not entitled to relief on ground one.

### D. Sentence Reduction

In her second ground for relief, Healy reasserts the arguments she made in her prior, denied motion for a sentence reduction (*see* Section I.D, *supra*): that she is entitled to a "decrease in offense level for less culpable defendants" because she was not the "lead player in the conspiracy," "her involvement was minor in relation to many of the other acts committed in the course of the conspiracy," and her involvement began "at the end of the investigation." DE 1 at 5. I reject these arguments for the reasons stated in my January 2018 Memorandum Opinion and Order denying that motion, 15-cr-335, DE 142. In short, Healy waived any such challenge as part of a negotiated guilty plea agreement.

A defendant can waive her right to collaterally attack her sentence pursuant to a plea agreement, and the waiver will be upheld as long as the Court determines that the waiver was knowing and voluntary and does not result in a miscarriage of justice. *See United States v. Khattak,* 273 F.3d 557, 558, 563 (3d Cir. 2001); *United States v. Gwinnett,* 483 F.3d 200, 205 (3d Cir. 2007). In her plea agreement, Healy waived the "right to file any appeal, *any collateral attack*, or any other writ or motion, . . . which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from a total Guidelines offense level of 31." *Id.*, DE 127 at 6 (emphasis added). As I found during the plea hearing, Healy's waiver was knowing and voluntary. *Id.* at 25 ("The defendant knows and understands the terms of the plea agreement. The defendant understands her constitutional rights.

17

The defendant knowingly, voluntarily, and intentionally waives those constitutional rights."). Healy represented in the agreement that she and her counsel had discussed the provisions of the agreement, "including those addressing the charges, sentencing, restitution, stipulations, *waiver*, immigration, and tax consequences," and that she "understand[s] this letter [agreement] fully." *Id.* at 5 (emphasis added). At the plea hearing, I confirmed that Healy had discussed the plea agreement's waiver provision with her counsel and understood the rights she was giving up. *Id.*, DE 145 at 20–22. I further explained to Healy that "the plea agreement provides if I impose a sentence that corresponds to the guidelines offense level of 31 or below, you cannot file an appeal, a Section 2255 petition, a writ, a motion, or any other collateral attack challenging your sentence," to which Healy confirmed that she understood. *Id*. As Healy's sentence of 80 months was well below the range of 135 to 168 months that corresponds to offense level 31, Healy's collateral challenge to her sentence is waived.

  Even if Healy had not waived this argument (or if the waiver were somehow invalid), I would nonetheless deny the petition because Healy's sentence would not have been any different even if she had received the two-point reduction that she now seeks. As discussed above, I considered, along with the other § 3553(a) factors, Healy's role in the conspiracy, and sentenced her to a length of imprisonment that in my judgment was warranted due to her position in the conspiracy, combined with the other § 3553(a) factors. *Id.*, DE 146 at 22 ("[J]ust looking at the defendant, where she fits in the hierarchy here, she's involved some of the strictly street-level folks including that she was, you know, cognizant of and involved in the distribution aspect, but well below, I would say, the major figures who were the leaders of this conspiracy, and I think her sentence should lie somewhere in between what they got and what the lowest people got, and

will."). On these facts, Healy has not demonstrated entitlement to the relief she seeks. Accordingly, habeas relief on ground two is denied.

### III.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Here, reasonable jurists would not find the Court's habeas ruling debatable. Accordingly, no certificate of appealability shall issue.

### IV.  CONCLUSION

For the foregoing reasons, Healy's petition is denied and no certificate of appealability shall issue.  An appropriate order follows.

DATED:  November 14, 2022

/s/ Kevin McNulty
_____
KEVIN MCNULTY
United States District Judge